UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ACHERON MEDICAL SUPPLY, LLC,<br>a Texas limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>COOK MEDICAL INCORPORATED,<br>an Indiana corporation, and COOK<br>MEDICAL, LLC, an Indiana limited<br>liability company,<br><br>Defendants. | CASE NO. 1:15-cv-01510-WTL-DKL |

## ANSWER TO COMPLAINT

Defendants, Cook Medical Incorporated and Cook Medical LLC (collectively "Cook Medical"), by their attorneys, and in Answer to Plaintiff's Complaint, state:

### Nature of Action

1.     This is an action to recover damages for breach of contract, Acheron entered into a five year contract with Cook to serve as exclusive and non-exclusive distributor of designated medical products manufactured by Cook to United States Department of Defense ("DOD") and Veterans Administration (VA) medical centers throughout the country.  Shortly after entering into the contract, Cook materially violated it by informing Acheron that it would not be using Acheron to make DOD sales.  Then Cook further materially violated the contract by terminating Acheron altogether because Acheron was unable to obtain a Federal Supply Schedule

1

contract with the VA.  The reason that Acheron was unable to obtain such a contract was because Cook refused to cooperate with a pre-award audit by the VA.

**ANSWER:**  Cook Medical admits that it entered into a Distribution Agreement dated July 23, 2014, with Acheron Medical Supply, and otherwise denies the allegations in paragraph 1.

### The Parties

2.      Plaintiff Acheron is a Texas limited liability company with its principal place of business in Batavia, Ohio.  The members of Acheron are SHFHG LLC, a Texas limited liability company with its principal place of business in Texas, and Lauch Medical LLC, an Ohio limited liability company with its principal place of business in Ohio.  The sole member of SHFHG LLC is John Wesley Pate, a citizen of Texas.  The members of Lauch Medical LLC are Frank D. Lauch and Louis H. Lauch, both of whom are citizens of the States of Ohio.

**ANSWER:**  Cook Medical lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 2 and therefore denies them.

3.      Defendant Cook Inc. is an Indiana corporation with its principal place of business in Bloomington, Indiana.

**ANSWER:**  Cook Medical denies the allegations in paragraph 3 insofar as Cook Medical Incorporated was converted, under and in compliance with the requirements of Indiana Business Corporation Law, to a limited liability company, namely Cook Medical LLC, effective January 1, 2014.

2

4.     Defendant Cook LLC is an Indiana limited liability company with its principal place of business in Bloomington, Indiana.  On information and belief, the states of the citizenship and principal places of business of the members of Cook LLC are diverse from the states of the citizenship and principal places of Plaintiff and its members.

**ANSWER:**   Cook Medical admits that Cook Medical LLC is an Indiana limited liability company with its principal place of business in Bloomington, Indiana and, on information and belief, that the state of citizenship and principal place of business of the sole member of Cook Medical LLC, which is Indiana, is diverse from the states of citizenship and principal places of business and its members.

### Jurisdiction and Venue

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 in that this is an action between citizens of different states where the matter in controversy exceeds the amount of $75,000, exclusive of interest and costs.

**ANSWER:**   Cook Medical admits the allegations in paragraph 5.

6.     Venue in this action is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) in that Defendants reside in this judicial district, a substantial part of the events giving rise to this claim alleged herein took place in this district, and the agreement between the parties upon which this action is based specifies that all disputes arising out of the agreement are to be governed by the laws of the

State of Indiana and any suit shall be initiated in "any state or federal court located in the State of Indiana with jurisdiction over the dispute."

**ANSWER:**   Cook Medical denies that the events occurring between the parties give rise to a claim by Plaintiffs against Cook Medical but admits the remaining allegations in paragraph 6.

### Acheron and Cook Enter Into Negotiations for Acheron to Become a Cook Distributor

7.     Acheron is engaged in the distribution and sale of medical equipment and supplies to both private-sector and government customers.

**ANSWER:**   Cook Medical admits that Acheron held itself out as a distributor and seller of medical equipment and supplies particularly to government customers and otherwise lacks knowledge and information to form a belief as to the truth of the allegations in paragraph 7 and therefore denies them.

8.     Cook develops, manufactures, sells and distributes medical devices for use in various medical applications throughout the United States and around the world.

**ANSWER:**   Cook Medical admits that it sells and distributes medical devices for use in various medical applications through the United States and around the world, but denies the remaining allegations in paragraph 8.

9.     Starting in 2013, Acheron and Cook engaged in communications toward creating a business relationship.  The discussions focused on Cook's interest in using Acheron's services to increase Cook's sales of medical products to DOD and VA medical centers.

4

14879797.2

**ANSWER:** Cook Medical admits that, starting in 2013. Acheron and Cook Medical engaged in communications toward creating a business relationship, admits that Acheron assured Cook Medical that Acheron knew how to do business with the government and also assured Cook Medical that Acheron had several government contacts which would increase Cook Medical's sales in this area to the benefit of both parties. Cook Medical denies the remaining allegations in paragraph 9.

10.     Together, the DOD and VA comprise the largest health care system in the United States. However, the processes of each agency are difficult for a vendor to navigate absent familiarity with them. Acheron offered that familiarity and the consequent opportunity to facilitate sales of Cook's medical products to the DOD and the VA by educating Cook on the government purchasing programs and serving as a Cook distributor.

**ANSWER:** Cook Medical admits that Acheron offered its familiarity in contracting with the DOD and VA and the consequent opportunity to facility sales of Cook Medical's medical products to the DOD and VA and education to Cook Medical on government purchasing programs as an inducement to convince Cook Medical to contractually engage Acheron as a distributor of Cook Medical's products. Cook Medical denies any remaining allegations in paragraph 10.

11.     Acheron also offered access to potential market opportunities that Cook did not possess. Acheron is certified as a Small Business by the U.S. Small Business and is affiliated with a designated Service-Disabled Veteran-Owned

5

entity.   Government agencies such as the DOD and VA require that some percentage of the procurements be set aside for Small Business and Service-Disabled Veteran-Owned businesses.

**ANSWER:**   Cook Medical admits that Acheron also purported to offer access to potential market opportunities that Cook Medical did not possess.   Cook Medical lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 11 and therefore denies them.

12.   Following multiple meetings, presentations, and negotiations, Cook presented an agreement to formalize the relationship between Cook and Acheron. The document was executed by the parties on July 23, 2014.   A copy of the document, entitled "Distribution Agreement" (hereafter the "Agreement"), is attached as **Exhibit A**.

**ANSWER:**   Cook Medical admits that Cook Medical and Acheron entered a Distribution Agreement dated July 23, 2014, admits that multiple meetings, presentations and negotiation preceded the entry of the Distribution Agreement. Cook Medical further admits that the document attached as Exhibit A is the Distribution Agreement between the parties.   Cook denies any remaining allegations in paragraph 12.

13.   While the preamble to the Agreement stated that it was entered into between Cook *LLC* and Acheron (Ex. A, p.1), the Agreement was executed by Cook *Inc.* (*Id.*, at p. 13), designated Cook, *Inc.* as the recipient of all formal notices (*Id.*, Art. X, ¶ 5), and referred to fulfillment of Acheron's orders by Cook and "Affiliates"

6

(*Id.* at Art. IV).   Accordingly, both named Cook entities are bound by the Agreement.

**ANSWER:**   Cook Medical admits that the Distribution Agreement was entered between Cook Medical LLC and Acheron.  Cook states that Cook Medical Incorporated was converted to a limited liability company, namely Cook Medical LLC, effective January 1, 2014.   Cook admits that Cook Medical LLC was incorrectly identified as Cook Medical Incorporated  with respect to notices and signature, but denies that Cook Medical Incorporated is an entity subject to any liability or rights under the Distribution Agreement.   Cook Medical denies any remaining allegations in paragraph 13.

<strong>The Terms of the Agreement</strong>

14.    Under the Agreement, Cook appointed Acheron as its exclusive distributor of Cook's Endoscopy products to VA and DOD Medical Centers (*Id.*, Art. I, ¶ 1).

**ANSWER:**   Cook Medical admits that subject to the terms and conditions of the Distribution Agreement, including, without limitation, Acheron's obligation to obtain a Federal Supply Schedule contract, it intended to make Acheron its exclusive third-party distributor to the VA and DOD of products defined in Article I, paragraph 1 of the Distribution Agreement.   Cook Medical states that the Distribution Agreement contemplated and provided for continued direct sales by Cook Medical and denies the remaining allegations in paragraph 14.

15.    Cook also appointed Acheron as its non-exclusive distributor of other Cook products, namely Urology, Critical Care, Aortic Intervention, Peripheral Intervention, Interventional Radiology, Lead Management, Surgery Otolaryngology and Women's Health products to VA and DOD Medical Centers, with the caveat that the parties would discuss changing the status of Acheron from non-exclusive to exclusive distributor for all or some of these products during the course of the Agreement (*Id.*, Art. I, ¶ 2).

**ANSWER:**   Cook Medical admits that paragraph 2 of Article I appoints Acheron, subject to terms and conditions of the Distribution Agreement, as a non-exclusive third-party distributor of Non-Exclusive Products as defined in the Distribution Agreement.   Cook Medical denies the remaining allegations in paragraph 15.

16.    The term of the Agreement was five years unless terminated for cause (*Id.*, Art. IX, ¶ 1).  Cook had the right to terminate the Agreement immediately only upon written notice to Acheron of the occurrence of a material breach by Acheron of any of the essential obligations contained in the Agreement which was not cured by Acheron within thirty (30) days after receiving written notice of the breach from Cook.  (*Id.*, Art. IX, ¶ 2).

**ANSWER:**   Cook Medical admits that the Distribution Agreement, subject to its terms and conditions, was for a five-year term and was terminable upon occurrence of a material breach which was not cured within 30 days of written notice of the breach.  Cook Medical further states that it provided Acheron 30 days

8

written notice of a material breach of Acheron's essential obligations under the Distribution Agreement, and Acheron failed to cure such material breach within 30 days after receiving written notice of the breach from Cook Medical. Cook Medical denies any remaining allegations in paragraph 16.

17.    The Agreement provided that Acheron was to purchase Cook's products for its own account and then resell them exclusively to the VA and the DOD (*Id.*, Art. III, ¶ 7a). All orders for products were to be submitted directly to Cook, which Cook could not reject except in very limited circumstances (*Id.*, Art. IV). Acheron could not sell or promote other products similar to the Cook Endoscopy products for which it was the exclusive distributor (*Id.*, Art. III, ¶ 7m).

**ANSWER:**   Cook Medical states that the terms of the Distributor Agreement speak for themselves, and  Cook Medical denies the allegations in paragraph 17 insofar as the paraphrasing and selective references to the provisions of the Distribution Agreement are not accurate reflections of the Distribution Agreement. Cook Medical states, for example, that Acheron's contemplated sales pursuant to an FSS contract, had one been obtained, would not necessarily have been made "exclusively" to the VA and DOD. Cook Medical further states that the Distribution Agreement contemplated continued direct sales by Cook Medical. Cook Medical further states that the remainder of Acheron's allegations are so vague and general compared to the actual terms of the Distribution Agreement that Cook Medical denies them.

9

18.     Under Article V, Paragraph 2, Acheron was to obtain a Federal Supply Schedule (FSS) contract and use it to sell Cook's products (*Id.* Art. V, ¶ 2).  An FSS contract is an indefinite delivery and quantity type of contract awarded by a government agency to approved vendors whereby the agency uses its buying power to obtain volume discounts on supplies and services.  The VA uses the FSS program to fulfill the health care acquisition needs of the VA medical centers through several multiple award schedules for medical equipment, supply, pharmaceutical, and service contracts.

**ANSWER:**   Cook Medical admits that under Article V, Paragraph 2, Acheron was obligated under the Distribution Agreement to obtain a Federal Supply Schedule contract and to use that Federal Supply Schedule contract to sell Cook Medical's products.  Cook Medical admits, on information and belief, that an FSS contract is an indefinite delivery and quantity type of contract awarded by a government agency to approved vendors.   Cook Medical lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 18 and therefore denies them.

19.     Under Article II, Paragraph 2, Cook, with very limited exception, agreed not to sell products for which Acheron was the designated exclusive or non-exclusive distributor to any other FSS holder (*Id.* Art. II, ¶ 2).

**ANSWER:**   Cook Medical states that the terms of the Distributor Agreement speak for themselves.  Cook Medical denies the allegations in paragraph 17 insofar as the paraphrasing and selective reference to the provisions of the Distribution

10

Agreement are not accurate reflections of the Distribution Agreement. Cook Medical admits that the Distribution Agreement specifically contemplated that Cook Medical had existing contractual relationships with other companies that might have an FSS contract and that it is possible such companies could occasionally sell products off a Federal Supply Schedule. Cook Medical denies the remaining allegations in paragraph 19.

20. Unlike the VA, the DOD generally refrains from purchasing equipment off of FSS schedules and instead maintains its own procurement system for sales to DOD medical centers. These are known as Distribution and Pricing Agreements, or DAPAs. A DAPA holder can distribute the products it represents to the ordering medical facilities at the price established in the DAPA. While Acheron had not yet obtained an FSS contract at the time of entry into the Agreement, it already was an approved DAPA holder with the DOD.

**ANSWER:** Cook Medical admits that it is familiar with Distribution and Pricing Agreements, or DAPAs. Cook Medical further states that it is a DAPA holder and has been well before any discussions or involvement with Acheron. Cook Medical lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20 and therefore denies them.

21. Article V dictated how Acheron would be paid for its services. In recognition of the time it might take for Acheron to obtain an FSS contract, the Agreement provided that Cook would pay a commission of 3% of the purchase price on the direct sale by Cook of Endoscopy Products between March 1, 2014 and

whenever Acheron obtained its FSS contract, provided it obtained that contract by the end of the 2014 calendar year.  After Acheron obtained its FSS contract, Cook would pay Acheron a commission on all such sales according to a commission schedule attached to the Agreement as Exhibit A (*Id.*, Art. V, ¶ 3).

**ANSWER:**   Cook Medical states that the terms of the Distributor Agreement speak for themselves.   Cook Medical denies the allegations in paragraph 21 insofar as the paraphrasing and selective reference to the provisions of the Distribution Agreement are not accurate reflections of the Distribution Agreement.   Cook Medical admits that conditionally agreed to pay Acheron a commission of 3% of direct sales by Cook Medical of Endoscopy Products to specified customers between March 1, 2014, and the time Acheron obtained the promised FSS contract, provided that Acheron obtained such FSS contract by the end of the 2014 calendar year. Acheron did not obtain an FSS contract by the end of the 2014 calendar year and, yet, it has retained commissions Cook paid pursuant to this conditional agreement. Cook Medical further admits that Exhibit A to the Distribution Agreement set forth the commissions Cook Medical agreed to pay Acheron on specified Cook Medical direct sales after Acheron obtained the FSS contract, which did not occur.   Cook Medical denies any remaining allegations in paragraph 21.

22.   Exhibit A to the Agreement listed the different types of products for which Acheron was the exclusive or non-exclusive distributor.   For all but one product, Acheron's commission rate was 8% on all contracted sales, *i.e.* sales of products ordered through Acheron, whether DAPA or FSS or other types of

contracts (BPA or IDIQ).  The last column listed the commission rate for direct sales by Cook, *i.e.*, sales of products ordered directly from Cook, where an FSS contract was required.  This referred to the sales that Cook made directly during the time Acheron was obtaining its FSS contract, as referred to in Article V, Paragraph 3. That rate was 3% for all direct sales of all products thus sold (*Id.*, Ex. A).

**ANSWER:**   Cook Medical states that the terms of the Distributor Agreement and its Exhibit A speak for themselves.   Cook Medical denies the allegations in paragraph 22 insofar as the paraphrasing and selective reference to the provisions of the Distribution Agreement are not accurate reflections of the Distribution Agreement.  Cook states, for example, that Exhibit A listed commissions to be paid on certain products under specified circumstances, but only after Acheron obtained an FSS contract, which did not occur.   Cook Medical denies the remaining allegations in paragraph 22.

23.   The Agreement set forth a minimum amount of sales increase that Acheron was expected to achieve in each year for each product on its FSS contract: 20% after year one; 15% after year two; and 12% each year thereafter (*Id.*, Art. IX, ¶ 3).  Because of the anticipated high volume of sales, the parties fully expected sales to easily surpass these thresholds.

**ANSWER:**   Cook Medical states that the terms of the Distributor Agreement speak for themselves.   Cook Medical denies the allegations in paragraph 23 insofar as the paraphrasing and selective reference to the provisions of the Distribution Agreement are not accurate reflections of the Distribution Agreement.   Cook

13

Medical states that Article IX, paragraph 3 set forth a schedule by which Acheron "must" increase sales, by year, after being awarded an FSS contract, which did not occur. Cook Medical denies the remaining allegations in paragraph 23.

### Cook Materially Breaches the Agreement

24.     Based on pre-agreement assurances and the commitments contained in the Agreement, Acheron undertook the time-consuming and expensive process of: (i) loading Cook's products onto Acheron's DAPA, for which it had to hire a new employee to complete the process; (ii) submitting an application to the VA's National Acquisition Center for the issuance of an FSS to Acheron for Cook's products; and (iii) traveling to various DOD and VA medical centers across the country to announce the Acheron/Cook relationship and lay the foundation for the sale of Cook products to those medical centers.

**ANSWER:**   Cook Medical states that the Distribution Agreement contains express language that the Distribution Agreement constitutes the entire Agreement between the parties as to the subject matter of the agreement and supersedes all prior oral or written agreements and denies that it made any pre-agreement assurances or commitments outside of the Distribution Agreement. Cook Medical lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 24 and therefore denies them.

25.     Not long after the Agreement was executed, however, Cook informed Acheron that it had decided not to distribute Cook products to the DOD through

Acheron's DAPA until Acheron was ready to distribute to the VA medical centers through an FSS contract.

**ANSWER:**   Cook Medical states that Acheron's obligation to obtain an FSS contract was a fundamental and integral part of the Distribution Agreement and denies the remaining allegations in paragraph 25.

26.   Subsequently, and in violation of the Agreement, Cook informed Acheron that it had decided to limit Acheron to making sales only to the VA medical centers through an FSS contract and that Cook itself would sell directly to the DOD medical centers.

**ANSWER:**   Cook Medical denies the allegations in paragraph 26, including but not limited to the allegation that Cook Medical violated the Distribution Agreement.

27.   Acheron protested that these actions were prohibited by the express language of the Agreement, which designated Acheron as the exclusive distributor of Endoscopy products to the DOD medical centers and the non-exclusive distributor of the other identified Cook medical products to the DOD medical centers.  But Cook refused to follow the Agreement.  As a result, Cook effectively deauthorized Acheron from making any sales to DOD medical centers in direct violation of the Agreement.

**ANSWER:**   Cook Medical denies the allegations in paragraph 27.

28.   By not allowing Acheron to sell Cook products to DOD facilities through its DAPA, Cook also prevented Acheron from demonstrating any significant

15

sales history of Cook's products in applying for a VA FSS contract, thereby triggering a pre-award audit.

**ANSWER:**   Cook Medical denies the allegations in paragraph 28.

29.   The published guidelines of the VA Office of the Inspector General (OIG) provide that a VA contract specialist can always request a pre-award OIG audit (or a post-award audit for that matter) at his or her discretion.   But a pre-award audit review is mandatory whenever there is not enough of a history of commercial sales by a reseller of a manufacturer whose products it will be representing.   http://www/va/gov/oal/business/fss/oig.asp.   The purpose of such a pre-award audit is to verify the sales, marketing, pricing, cost, and other data provided in support of the application.

**ANSWER:**   Cook Medical lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 29 and therefore denies them.

30.   The VA contract specialist in fact did request a pre-award OIG audit review in order to issue the FSS contract for which Acheron was applying.   Acheron immediately cooperated with the OIG audit and provided whatever information it could.   But Cook refused to cooperate, which stalled the application process.

**ANSWER:**   Cook Medical admits that it declined to submit to a cumbersome and burdensome pricing audit.   Cook Medical lacks knowledge and information sufficient to form a belief as to the truth of the allegation of a request by a VA contract specialist or Acheron's alleged cooperation with the audit and therefore

16

denies those allegations.  Cook Medical expressly denies the remaining allegations in paragraph 30.

31.     After the passage of several months, Cook appeared to reconsider and notified Acheron in January 2015 that it would submit the necessary information for the OIG to complete its audit.  With that assurance, Acheron resubmitted its application for the FSS contract.  But in March 2015, Cook changed its mind, notifying Acheron that it would not in fact submit to an OIG audit after all.

**ANSWER:**   Cook Medical denies the allegations in paragraph 31.

32.     Cook gave no reason to Acheron for refusing to cooperate with the OIG audit other than that it had not expected there would be an audit and that an audit would be too cumbersome and intrusive.  Acheron believes, however, that the true reason was that there was something Cook wanted to conceal that it feared an audit would unearth.

**ANSWER:**   Cook Medical denies the allegations in paragraph 32.

33.     By dishonoring its obligation to use Acheron to sell its products to the DOD medical centers, and by then refusing to cooperate with the OIG audit necessary to obtain a VA FSS contract, Cook essentially prevented Acheron from selling *any* Cook products to the DOD or the VA medical centers.  This flagrantly breached Cook's obligations under the Agreement.

**ANSWER:**   Cook Medical denies the allegations in paragraph 33.

34.     In accordance with Article X, Paragraph 7b. of the Agreement, in June 2015 Acheron sent a letter formally notifying Cook that Cook had materially

17

violated the Agreement.   The letter provided a written summary of the dispute, described the issues involved, with relevant Agreement references, the operative facts, and a proposed resolution.

**ANSWER:**   Cook Medical admits that on June 24, 2015, it received an undated letter from Acheron setting forth Acheron's view of the parties' dispute and the issues.  Cook Medical denies the remaining allegations in paragraph 34.

35.    On July 1, 2105, Cook sent a written response, disputing Acheron's factual presentation, denying that Cook had violated the Agreement, and rejecting Acheron's proposed resolution.

**ANSWER:**   Cook Medical admits the allegations in paragraph 35.

36.    Cook's response instead gave Acheron written notice that *Acheron* was supposedly in material breach of the Agreement by its inability to obtain an FSS contract to use to sell Cook's Endoscopy products.  Cook did so even though it knew perfectly well that the reason Acheron could not obtain such a contract was because Cook would not cooperate with the VA OIG audit.

**ANSWER:**   Cook Medical admits that it gave Acheron the contractually required written notice that Acheron was in material breach of the Distribution Agreement and denies the remaining allegations in paragraph 36.

37.    Cook's response also contained a notice of termination with thirty (30) days to "cure."  But Cook prevented any such opportunity to cure by continuing to refuse to cooperate with the VA audit.

**ANSWER:**   Cook Medical admits that its correspondence triggered the 30-day cure period under the Distribution Agreement, denies that it had any obligation under the Distribution Agreement to submit to a pricing audit and denies the remaining allegations in paragraph 37.

38.    The following further correspondence and a telephonic meeting between representatives of the parties that failed to reach any resolution.  Its pre-suit obligations under Article X, Paragraph 7b. of the Agreement exhausted, Acheron now brings this lawsuit to remedy Cook's material breaches.

**ANSWER:**   Cook Medical admits that efforts to reach a resolution of the parties' dispute have been unsuccessful and that both parties have exhausted their pre-suit obligations under the Distribution Agreement.  Cook Medical denies that it breached the Distribution Agreement and denies any remaining allegations in paragraph 38.

## COUNT I
### (Breach of Contract)

39.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 38 above for Paragraph 39 to this Count I as if fully set forth herein.

**ANSWER:**   Cook Medical incorporates by reference its responses to paragraphs 1 through 38 above as if fully restated herein.

40.    The Agreement between Acheron and Cook constituted a valid and enforceable written contract.

**ANSWER:**   Cook Medical admits the allegations in paragraph 40.

41.    Acheron has performed all conditions, covenants and terms required of it by the Agreement, except as prevented by Cook's conduct.

**ANSWER:**    Cook Medical denies the allegations in paragraph 41.

42.    Acheron stood ready, willing and able, and took all steps necessary, to fulfill its obligation to distribute Cook medical products to DOD medical centers through Acheron's DAPA.

**ANSWER:**    Cook Medical denies the allegations in paragraph 42.

43.    Acheron stood ready, willing and able, and took all steps to fulfill its obligation to distribute Cook medical products to the VA medical centers through an FSS contract.

**ANSWER:**    Cook Medical denies the allegations in paragraph 43.

44.    Cook prevented Acheron from making sales to DOD medical centers through its DAPA by deciding to withdraw authorization to Acheron to sell its products to the DOD medical centers, in direct and material breach of the Agreement that specifically designated Acheron as exclusive and non-exclusive distributor of Cook products to DOD medical centers.

**ANSWER:**    Cook Medical denies the allegations in paragraph 44.

45.    Cook also prevented Acheron from obtaining an FSS contract by refusing to cooperate with an OIG audit that had been precipitated by Cook's own actions in preventing Acheron from demonstrating a history of sales of Cook products by not allowing Acheron to sell Cook's medical products to DOD medical centers in violation of the Agreement.

**ANSWER:**   Cook Medical denies the allegations in paragraph 45.

46.   Furthermore, the Agreement affirmatively required Cook to cooperate with Acheron in obtaining an FSS contract in the face of any requirement of the government for an audit.  Article X, ¶ 4 provided, in relevant part:

> Neither COOK nor any Affiliate nor DISTRIBUTOR shall be liable for any delay or default caused by …act of government or supra-national entity or agency…  The party affected by such a condition shall use every reasonable effort to correct or eliminate the cause which prevents performance and resume performance as soon as possible.

**ANSWER:**   Cook Medical denies the allegations in paragraph 46.

47.   Acheron thereby was not liable for any default or delay caused by an act of a government agency (here the VA's requirement of an OIG audit).  Rather, as the party affected by the "condition," Cook was required to "use every reasonable effort to correct or eliminate the cause which prevent[ed] performance," *i.e.*, Acheron's ability to obtain the FSS contract.  That meant cooperation with the OIG audit.

**ANSWER:**   Cook Medical denies the allegations in paragraph 47.

48.   As Acheron was prevented from obtaining the FSS contract by Cook's refusal to cooperate with the VA's OIG audit requirement, it was not Acheron but Cook that materially breached the Agreement.

**ANSWER:**   Cook Medical denies the allegations in paragraph 48.

49.   Furthermore, because the Agreement provided for the purchase of goods for resale, it is covered by the Indiana Commercial Code (the "ICC").  Under the ICC, all contracts for the sale of goods must be performed in good faith.  Indiana

21

Code § 26-1-1-203.   Good faith means honesty in fact and the observance of reasonable commercial standards.  It means not taking opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.

**ANSWER:**   Paragraph 49 asserts Plaintiff's interpretation of law and no factual allegations.   However, to the extent that paragraph 49 requires a substantive response from Cook Medical, Cook Medical denies the allegations in paragraph 49.

50.   Cook's refusal to cooperate with the OIG audit, thereby preventing Acheron from obtaining the FSS contract, did not comport with its good faith obligation under the ICC.   It amounted to taking opportunistic advantage to prevent Acheron from obtaining the FSS contract.

**ANSWER:**   Cook Medical denies the allegations in paragraph 50.

51.   Such a duty also exists at common law.   Under the doctrine of good faith and fair dealing that is implied in every contract, one party cannot prevent the other party to a contract from fulfilling a condition precedent to one's own performance and then use that failure to justify its own nonperformance.

**ANSWER:**   Cook Medical denies the allegations in paragraph 51.

52.   That is exactly what happened here.   As a condition precedent to Acheron's performing under the Agreement (for VA sales), Acheron has to obtain an FSS contract.   Acheron was prevented from obtaining that contract by Cook's action

in failing to cooperate with the OIG audit. Cook cannot now use that failure to justify its nonperformance and termination of the Agreement.

**ANSWER:** Cook Medical denies the allegations in paragraph 52.

53. Cook's breach of the Agreement was willful and vexatious.

**ANSWER:** Cook Medical denies the allegations in paragraph 53.

54. Cook's breach is continuing.

**ANSWER:** Cook Medical denies the allegations in paragraph 54.

55. Acheron has suffered significant monetary loss and continues to suffer significant monetary loss as a direct and proximate result of Cooks material breach.

**ANSWER:** Cook Medical denies the allegations in paragraph 55.

56. Based on final information provided by Cook, Cook's 2014 revenue for annual Endoscopy sales to the VA and DOD were slightly over $5 million. Taking into account the parties' expectations, as reflected in Article IX, Paragraph 3 of the Agreement, that Acheron would at a bare minimum increase sales by 20% after year one, 15% after year two, and 12% each year thereafter, then over the course of the five (5) year contract, Acheron's lost commissions (measured at 8% of revenue per year) is minimally over $3 million for Endoscopy products alone. This does not account for Acheron sales of Cook medical products other than Endoscopy for which Acheron was a non-exclusive distributor.

**ANSWER:** Cook Medical denies the allegations in paragraph 56.

57. In addition, Acheron was entitled to commission at the full rate on Cook's sales to the VA and DOD pre-termination for which Acheron was paid

commission only at the 3% rate.  Acheron was entitled to be paid for these sales at the 8% rate because Cook had prevented Acheron from making these sales by withdrawing Acheron's contractual authorization to sell to the DOD and by not cooperating with the OIG audit, all in violation of the Agreement.

**ANSWER:**   Cook Medical denies the allegations in paragraph 57.

## SEPARATE DEFENSES

1.      Acheron's Complaint fails to state a claim upon which relief can be granted.

2.      Acheron's claims are barred by the doctrine of unclean hands, waiver, estoppel, and laches.

3.      Acheron has failed to mitigate any damages it incurred as a result of any alleged conduct by Cook.

4.      Acheron failed to satisfy its own contractual obligation to obtain a Federal Supply Schedule contract.

5.      Acheron was the first to materially breach the Distribution Agreement.

6.      Acheron's claims are barred due to a failure of a condition precedent.

7.      To the extent that Acheron is entitled to any recovery by way of its Complaint, such recovery must be reduced or nullified by the amount that Cook Medical is entitled to setoff against such recovery for Acheron's own breaches of contract and other wrongful conduct as set forth in Cook's counterclaim and otherwise.

24

14879797.2

## COOK MEDICAL, LLC'S COUNTERCLAIM – BREACH OF CONTRACT

1.    Cook Medical LLC, entered a Distribution Agreement on July 23, 2014, with Acheron Medical Supply.

2.    A true and correct copy of the Distribution Agreement is attached hereto as Exhibit A.

3.    Under the Distribution Agreement, Acheron was obligated to obtain a Federal Supply Schedule contract and to use that Federal Supply Schedule contract to sell Cook's products.  (Article V, paragraph 2).

4.    Acheron's agreement and obligation to obtain a Federal Supply Schedule contract for the sale of Cook Medical's products was an essential part of the Distribution Agreement.

5.    Acheron's representations that they could and would obtain a Federal Supply Schedule contract were a material inducement to Cook Medical entering the Distribution Agreement with Acheron.

6.    The Distribution Agreement governs the relative contractual rights and obligations of the parties.  The Distribution Agreement does not require Cook Medical to undertake the burden of an OIG audit to enable Acheron to be able to fulfill its own contractual obligations.

7.    In fact, the Distribution Agreement says nothing about an OIG audit. Nor did Acheron tell Cook Medical prior to entering the Distribution Agreement that Cook Medical may be asked to submit to the burden of an OIG audit as a condition of Acheron fulfilling its key contractual obligation of obtaining a Federal

14879797.2

Supply Schedule contract.  To the contrary, Acheron assured Cook Medical that no such audit would be required.

8.     Acheron assured Cook Medical that it (Acheron) knew how to do business with the government, had several government contacts, and would expand and increase Cook Medical's government business to the benefit of both parties.

9.     The agreement between Cook Medical and Acheron was premised on Acheron increasing overall Cook Medical's sales to the federal government and creation of a new sales avenue for Cook Medical's products specifically through a FSS contract, which Acheron was to obtain.

10.     Cook Medical invested in the relationship with Acheron, including, but not limited to, by subsidizing Acheron with payments of commissions on Cook Medical's own direct sales for Acheron's preparatory work and expenses incurred prior to the effective date of the Distribution Agreement.

11.     Cook Medical made payments to Acheron under the Distribution Agreement that were conditioned on Acheron obtaining an FSS contract by the end of calendar year 2014.  Acheron did not obtain the promised FSS contract but has retained the amounts Cook paid to them subject to this condition.

12.     As it became clear that Acheron would be unable to obtain a Federal Supply Schedule contract, the relationship between the parties deteriorated.  It became clear based on Acheron's demands, and the interactions of Acheron's principals with individuals at Cook Medical, that a continued collaboration between Cook Medical and Acheron was untenable.

14879797.2

13.     On July 1, 2015, Cook Medical gave written notice to Acheron that Acheron was in material breach of its essential contractual obligations under the Distribution Agreement, namely, the obligations to obtain a Federal Supply Schedule contract and use it to sell Cook Medical's endoscopy products, to provide Cook Medical access to a Federal Supply Schedule contract for endoscopy products at pricing acceptable to Cook Medical, and to use its best efforts to promote, solicit and expand the sale of Cook Medical's endoscopy products.

14.     Acheron failed to cure its material breaches of the Distribution Agreement as identified in Cook Medical's July 1, 2015 letter.  The most important breach, the failure to obtain a Federal Supply Schedule contract for the sale of Cook Medical's endoscopy products remains uncured today.

15.     Effective July 31, 2015, Cook Medical terminated the Distribution Agreement with Acheron in accordance with the terms of the Distribution Agreement.

16.     A true and correct copy of Cook Medical's notice of termination to Acheron is attached hereto as Exhibit B.

17.     The Distribution Agreement was a valid and enforceable agreement between Cook Medical and Acheron.

18.     Acheron breached the Distribution Agreement.

19.     Cook Medical performed all obligations it had under the Distribution Agreement until lawfully terminating the Distribution Agreement.

27

20.    Cook Medical was damaged as a result of Acheron's breaches of the Distribution Agreement.

WHEREFORE, Cook Medical prays for entry of judgment in favor of Cook Medical on all of Acheron's claims, that Acheron take nothing by way of its Complaint, and that the Court enter judgment in favor of Cook Medical on Cook Medical's Counterclaim.

Respectfully submitted,

*s/ Anne L. Cowgur*
Anne L. Cowgur. Attorney #21584-49
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN  46204
Telephone:  (317) 713-3500
Facsimile:   (317) 713-3699
E-mail:       acowgur@taftlaw.com

*Attorney for Cook Medical Incorporated and*
*Cook Medical, LLC*

28

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2015, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to the following attorneys of record by operation of the Court's electronic filing system:

Peter A. Schroeder
Bradley J. Wombles
NORRIS CHOPLIN SCHROEDER LLP
101 West Ohio Street, Ninth Floor
Indianapolis, IN  46204-4213

Anthony Valiulis
Irving Geslewitz
MUCH SHELIST, PC
191 North Wacker Drive, Suite 1800
Chicago, IL  60606

*s/ Anne L. Cowgur*
ANNE L. COWGUR

14879797.2