# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **ACHERON MEDICAL SUPPLY, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 1:15-cv-1510-WTL-DKL** |
| | ) | |
| **COOK MEDICAL INCORPORATED,** *et* | ) | |
| *al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

*Entry on Plaintiff's Motion to Compel [doc. 40]*

Acheron Medical Supply, LLC brought this action for damages for breach of contract against Cook Medical Incorporated and Cook Medical LLC (together "Cook Medical" or "Cook").  In July 2014 Acheron and Cook Medical, LLC entered into a five-year Distribution Agreement (Agreement) pursuant to which Acheron was to be the exclusive distributor to the Veterans Administration (VA) and Department of Defense (DOD) Medical Centers of endoscopy medical products manufactured by Cook and a non-exclusive distributor of other Cook products.  The Agreement provided that Acheron would obtain a Federal Supply Schedule (FSS) contract and use it to sell the products. Acheron claims that Cook breached the Agreement by refusing to use Acheron to distribute products to the DOD until Acheron acquired an FSS with the VA, that Cook's refusal triggered an audit in the FSS process, and that Cook refused to cooperate with an audit of Cook Medical's Customer Pricing Records requested by the VA's Office of

Inspector General (OIG) as part of the FSS application process.  As a result, Acheron alleges that it was unable to obtain an FSS, which Cook cited as its reason for terminating the Agreement.

*Plaintiff's Motion to Compel* as limited by agreement of the parties following informal discovery conferences held on August 19 and 22, 2016, concerns: information the VA's OIG had requested of Cook Medical as a condition of acting on Acheron's application for an FSS, which is the subject of *Interrogatory No. 22* of *Plaintiff's Second Set of Interrogatories*, and other information regarding Cook Medical's discount pricing, which is *Interrogatory No. 23* of *Plaintiff's Second Set of Interrogatories*.  Corresponding documents are sought in *Request for Production Nos. 19 and 20*, respectively.  The discovery at issue was served on Defendants' counsel by mail on June 24, 2016.

More specifically, the interrogatories state:

22.  Provide all information that was requested by the Department of Veterans Affairs Office of Inspector General in its letter to Ron Walters of Cook Medical dated August 14, 2014 ("OIG Letter") as listed in Enclosure A to that letter in the suggested record layout set forth in Enclosure B to that letter.

23.  To the extent not expressly requested in Enclosure A to the OIG Letter, or not already included in your response to Enclosure A, also provide the following information:

- Discounts Cook Medical gives to commercial end-user customers
- Discounts given to Valued Added Resellers
- Discounts given to Dealers/Distributors/Re-sellers. If there are tiers of discounts based on different classes provide those as well and indicate within which category Acheron fell
- Discounts given to national accounts
- Discounts for state and/or local governments
- Discounts given to any educational institutions

2

- Discounts given to prime vendors/syndicated buying organizations
- Information describing any tiered discount plans
- A summary of non-standard discounting practices, including the types of discounts given and a description of the circumstances under which they are given.
- Any incentives, rebate programs, or other non-discount based inducements Cook offers to any or all customer classes, including extended payment periods, extended warranties, etc.

[*Pl.'s Mot. Compel, Ex. F, Pl.'s Second Set Interrogs.*, doc 40-6. at 4-5.] The OIG Letter states that it "is performing a pre-award review of the proposal submitted by Acheron" [*id.* at 8] and refers to "a list of preliminary information (Enclosure A) needed to start our review." [*Id.*] Although the letter initially refers to the proposal submitted by Acheron and the "proposed items" and latter references a "sample of your specific data for all items included in the proposal," [*id.* at 8-9], it also states: "We have … determined we need electronic transactional sales data from both Cook and Acheron to conduct our review. This data should include *all domestic sales transactions*, FSS and non-FSS … from February 1, 2014, through July 31, 2014." [*Id.* at 8.] Further, Enclosure A to the OIG Letter, titled "Preliminary Review Materials Requested, requires: "Sales data as explained in the letter …. Please ensure line item detail for all items and *do not limit the data to only items included in Acheron's offer*." [*OIG Letter, Enclosure A*, doc. 40-6, at 10.]

*Request for Production No. 19* seeks: "All documents responsive to the request for information" by the OIG Letter. [*Pl.'s Mot. Compel, Ex. H, Pl.'s Second Set Reqs. Produc.*, doc. 40-8 at 5.] *Request for Production No. 20* seeks, to the extent not included in the production responsive to *Request No. 19*, all documents containing information regarding Cook Medical's discount information specified in *Interrogatory No. 23*. [*Id.* at 5-6.]

3

Defendants served their responses to the *Second Set of Interrogatories* on Acheron's counsel on August 1, 2016. They made general objections based on, among other things, relevance and proportionality limits on discovery under Federal Rule of Civil Procedure 26(b)(1). Cook specifically objected to *Interrogatory No. 22* on the ground that it attempted "to require Cook Medical to create and/or assemble information for purposes of this litigation that Cook Medical previously determined was too burdensome to create and/or assemble and too financially sensitive to disseminate when such information was requested by the OIG." [*Pl.'s Mot. Compel, Ex. G, Cook Medical's Resp. Pl.'s Second Set Interrogs.*, doc. 40-7 at 3.] Cook also objected on the grounds of undue burden and the proportionality limits on discovery, estimating that "assembling this information would require the equivalent of dedicating a full time employee to the task for a period of 37 to 52 days." [*Id.* at 4.] Similarly, Cook objected to *Interrogatory No. 23* "as unduly burdensome and failing to comply with the proportionality limits on discovery…." [*Id.*at 5.] Cook's objection to *Interrogatory No. 23* continued:

> Responding to this request would require Cook Medical to review the pricing terms of thousands and thousands of customers, and then to review the contracts underlying those relationships to determine whether disclosure of this information would breach any of the contracts. Moreover, disclosure of this information would place Cook Medical at a competitive disadvantage insofar as the principals of Acheron continue to operate as potential competitors of Cook Medical. The Interrogatory is further objectionable because is not reasonably calculated to lead to the discovery of admissible evidence, and is not limited in time and scope to the matters at issue in this case.

[*Id.*] However, noting that it was not waiving its objections, Cook produced some documents containing more limited information it agreed to assemble and produce in

order to offer a compromise.  Cook made like objections to *Request for Production Nos. 19 and 20*.  [*Pl.'s Mot. Compel, Ex. I, Cook Medical's Resp. Pl.'s Second Set Reqs. Produc.*, doc. 40-9 at 6-8.]

In its *Motion to Compel* Acheron argues that its purpose in *Interrogatory No. 19* "is to replicate as nearly as possible what Cook Medical was required to do as part of the FSS application process."  Acheron asserts that the information is "highly relevant because it enhances the ability of an expert to attest to how the VA more likely than not would have responded in terms of acting on the application and what prices would have been considered 'fair and reasonable.'"  [*Pl.'s Mot. Compel*, doc. 40, at 7 ¶ 17.]  Acheron argues that Cook overstates its burden in producing the information, citing the General Services Administrations' surveys on the amount of time it takes to produce the pre-award disclosures in offers for FSS contracts.  GSA concluded that it took on average 32.41 hours for "light lift" situations and 41.9 hours for "heavy lift" situations.  [*Id.*, at 8 ¶ 18.]  Furthermore, Acheron argues that the proportionality standard of Rule 26 is satisfied "given the centrality of the issue of the audit and what would have ensued had Cook Medical cooperated[.]"  [*Id.* ¶ 19.]  Acheron estimates its potential damages are in the millions of dollars range.  [*Id.*]

Regarding *Interrogatory No. 23*, Acheron contends that it seeks "information that very likely would have been sought by the VA in the negotiation process in determining a 'fair and reasonable price' for the FSS had Cook Medical cooperated with the OIG audit request.  [*Id.* ¶ 20.]  Again, Acheron asserts that the information is needed for an expert to determine how the VA more likely than not would have responded to the FSS

application and what price levels would have been considered "fair and reasonable." [*id.*, at 8-9, ¶ 20.] Acheron submits that Cook Medical would not have to review the pricing terms of thousands of customers, but would only need to reveal its structured pricing arrangements, which it claims are "something that any substantial manufacturer like Cook … would have." [*Id.*, at 10, ¶ 24.] Also, Acheron says that Cook's claims of a competitive disadvantage ring hollow since Acheron is "essentially non-operational as a consequence of Cook Medical's termination of the Agreement." [*Id.*]

Cook Medical responds that *Interrogatory Nos. 22 and 23* "purport to require [it] to engage in an internal audit of records and extensive research to compile data to respond to each interrogatory." [*Resp. Mot. Compel*, doc. 45, at 8.] Cook Medical submitted the Affidavit of Kelly Fischer, the Director of Global Reporting & Accounting Operations for Cook Group, Inc., who assisted with preparing Cook's responses to the discovery at issue. [*Fischer Aff.*, doc. 45-1 ¶ 2.] (During one of the telephonic discovery conferences with the Court Cook indicated that it thought an evidentiary hearing would be necessary; Acheron disagreed. The Court proceeds on the basis of the evidence before it.) Fischer and Jeff Lasiter, Pricing Manager for Cook Group, Inc., tried to make a reasonable estimate of the amount of time that would be needed to assemble the information response to *Interrogatory No. 22.* [*Id.* ¶ 5.] Fischer states that the OIG Letter request "pertains to all of Cook Medical LLC's thousands of customers across *all* products, not just the endoscopy products that were proposed to be listed on the Federal Supply Schedules," meaning that it "covers thousands of customers and approximately 16,000 products." [*Id.* ¶ 6.] And "[m]any individual customers have multiple contracts that cover different products,

6

locations and circumstances." [*Id.*]  In addition, "much of the information requested does not readily exist and would have to be created by piecing together information from multiple sources." [*Id.* ¶ 7.]  For example, "Cook Medical LLC does not have existing written pricing policies and procedures." [*Id.* ¶ 11.]  Nor does Cook Medical have an organizational chart showing the persons responsible for preparing the CSP [Commercial Sales Practices]." [*Id.*]

Fischer explained that in order to provide much of the information requested, someone would have "to pull each individual contract [or contracts] for thousands of customers across several product lines and to perform calculations" and/or compile information.  [*Id.* ¶ 9; *see also id.* ¶¶ 10, 11 (indicating that Cook Medical LLC does not have existing written pricing policies and procedures").]  Fischer stated that the process for responding to other items "may be simple," for example, responding to Item 9, which is "[r]econciliation of sales data to your general ledger or your financial statements." [*Id.* ¶ 12; *see* doc. 40-6.]  She estimated that it would take 37 to 52 full-time employee days to compile the information in the Preliminary Review Materials Requested in the OIG Letter and likewise in *Interrogatory No. 22*.  [*Fischer Aff.*, doc. 45-1 ¶ 13.]  Historically, when Cook makes similar estimates about how much time it takes to assemble information, it has taken longer than projected; Fischer is concerned that the actual time it may take to respond to the interrogatories may be longer than she has estimated.  [*Id.* ¶¶ 5, 13.]

Cook Medical also challenges the relevance of the requested information.  As noted, Acheron asserts that its expert needs the information to attest to how the VA more likely than not would have responded to the FSS application and what prices it would

have found fair and reasonable.  Cook responds that the information requested was only
*preliminary* and additional, follow-up information would be required; as a result the
expert could only speculate about what might have happened.  Cook also raise a concern
over protecting the confidentiality of the information if it is substantively relied on by a
party in summary judgment or at trial.  (It acknowledges, however, that the parties can
protect the information under a Protective Order during the discovery process.  [*Resp.
Mot. Compel*, doc. 45, at 12.])

In reply, Acheron maintains that the information sought in the OIG Letter and
*Interrogatory Nos. 22 and 23* relate only to the products on the proposed FSS schedule, that
is, Endoscopy products.  It asserts that the information is not sought for all 16,000 of Cook
Medical's products across all ten of its business units, but rather only for sales and pricing
information related to the 1,384 Endoscopy products on the FSS solicitation.  [*See, e.g.,
Pl.'s Reply Support Mot. Compel*, doc. 46, at 2, 6.]

*Discussion*

Under the Federal Rules of Civil Procedure, unless otherwise limited by the Court,
the scope of discovery is broad:

> Parties may obtain discovery regarding any nonprivileged matter that is
> relevant to any party's claim or defense and proportional to the needs of
> the case, considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant information,
> the parties resources, the importance of the discovery in resolving the
> issues, and whether the burden or expense of the proposed discovery
> outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  The Court may limit the extent of discovery if it finds that the proposed discovery falls outside the scope permitted by Rule 26.  Fed. R. Civ. P. 26(b)(2).

Rule 33 of the Federal Rules of Civil Procedure, which governs written interrogatories, a party to serve on any other party "no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1).  An interrogatory may relate to any matter that is nonprivileged, relevant, and discoverable under Rule 26(b).  Fed. R. Civ. P. 33(a)(2).  Thus the proportionality discovery rule applies to interrogatories and an interrogatory must be "proportional to the needs of the case," considering among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Rule 33 requires that the responding party serve its answers and objections within 30 days after being served with the interrogatories, unless otherwise agreed upon by the parties or ordered by the court. Fed. R. Civ. P. 33(b)(2).

Rule 34, which governs discovery requests for the production of documents, allows a party to request another party to produce documents or electronically stored information "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1)(A).  The Rule "only requires a party to produce documents that exist at the time of the request; a party cannot be compelled to create a document for its production." *Williams v. City of Hartford*, No. 3:15CV00933(AWT), 2016 WL 1732719, at *17 (D. Conn. May 2, 2016); *see also Turner v. Rataczak*, No. 13-CV-48-BBC, 2014 WL 834721, at *3 (W.D. Wis. Mar. 4, 2014) (citing cases).  Responses to requests for production should be made "within 30 days after" the responding party is served. Fed. R. Civ. P. 34(b)(2)(A).

Rule 37 authorizes motions to compel discovery. The Rule requires that such a motion "include a certification that the movant has in good faith conferred or attempted to confer with …the party failing to make … discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Similarly, Local Rule 37-1 requires parties to confer in a good faith effort to resolve a discovery dispute before filing a motion to compel. S.D. Ind. L.R. 37-1(a)-(b). An incomplete discovery response is treated as a failure to respond. Fed. R. Civ. P. 37(a)(4). If the court grants a motion to compel in part and denies it in part, it may issue a protective order authorized under Rule 26(c) and may, but is not required to "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Rule 26(c) authorizes protective orders that, among others, limit the scope of discovery and require that commercial information "be revealed only in a specified way[.]" Fed. R. Civ. P. 26(c)(D), (G).

To begin with, Cook Medical argues that Acheron's motion is premature because it was filed without compliance with Local Rule 37-1 and the Court's order requiring the parties to seek an informal resolution of a discovery dispute with the Magistrate Judge before filing a motion to compel. That may be true, but after the motion was filed, the Court held two informal conferences with the parties in an effort to resolve the issues raised by the *Motion to Compel*. It is also true that the motion does not contain a statement of Acheron's good faith efforts to resolve the dispute, but this omission does not require that the motion be denied. The purposes of these requirements seem to have been fulfilled—the parties have worked together with the Court in an effort to resolve the

10

discovery dispute and the parties have reached a compromise on some of the discovery at issue, narrowing the present discovery dispute considerably.

In addition, Cook Medical's response brief suggests that Acheron has gone beyond the number of interrogatories allowed by Rule 33.  However, its initial responses to the interrogatories did not raise this objection, so it is deemed forfeited.  *See, e.g., Allen v. Mill-Tel, Inc.*, 283 F.R.D. 631, 633–34 (D. Kan. 2012).

Moving on, Acheron argues that Cook Medical misreads the OIG Letter and points out that the letter seeks information related to the "proposed items."  Yet the letter requests "*all* domestic sales transactions."  In fact, Enclosure A to the letter requests "sales data" and expressly advises "*do not limit the data to only items included in Acheron's offer*." [*OIG Letter, Enclosure A*, doc. 40-6 at 10.]  At best, the OIG Letter is ambiguous as to the breadth of sales information requested.  And Cook Medical's reading of the letter as requesting sales information across all products, not just Endoscopy products, is not unreasonable.  Given this reasonable reading and based on Fischer's affidavit, which is unrefuted, the OIG Letter would cover thousands of Cook Medical's customers and approximately 16,000 products.  Furthermore, Cook has offered evidence that responding to the OIG Letter would require the work of a full time employee for 37 to 52 days.  This evidence has not been refuted by Acheron either.

Instead, Acheron relies on a survey conducted by the GSA of FSS offerors and reported in the *Federal Register* regarding the amount of time it takes to make pre-award disclosures for FSS proposals.  The survey indicates that it takes on average 32.41 hours for "light lift" situations and 41.8 hours for "heavy lift" situations.  [*See Resp. Opp'n Mot.*

*Compel*, *Ex. 2*, doc. 45-2 at 10.]  But the *average* hours reported in the Federal Register's "disclosure burden estimates" from over three thousand offers do not refute the specific evidence submitted by Cook, which concerns the actual amount of time it would take Cook Medical to assemble its own information in this specific instance.  The time estimated by Cook Medical for responding to discovery requests at issue seems to establish undue burden.  It also suggests that the requested discovery goes beyond what would be proportional to the needs of the case.  *See, e.g.*, *Kleen Prod. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2012 WL 4498465, at *9 (N.D. Ill. Sept. 28, 2012) ("Rule 26(b)(2)(C)(iii) empowers a court to limit the frequency or extent of discovery if it determines that the burden or expense of the proposed discovery outweighs its likely benefit or that it is unreasonably cumulative or duplicative.") (quotation and citation omitted), *objections overruled by* 2013 WL 120240 (N.D. Ill. Jan. 9, 2013).

Regardless, Acheron also argues that had Cook Medical engaged in an interactive process, it would have discovered that the VA was only interested in the sales information requested as related to the items listed in the FSS proposal.  Assuming that was in fact the case, then the VA was seeking information relating to only 1,384 Endoscopy products, not all 16,000 Cook products.  The December 28, 2014, "No Award" letter from the VA to Acheron tends to support Acheron's view that the VA was seeking information regarding only Endoscopy products.  [*See Pl.'s Reply Support Mot. Compel*, doc. 46-4 at 1 (stating that Acheron was proposing 1,384 products).]  Not to mention, the fact that the OIG Letter gave Cook Medical only three weeks to assemble the information also supports this conclusion.  In addition, in mid-January 2015 Cook Medical's Ron

12

Walters emailed a superior at Cook, indicating that because of the OIG involvement, Cook "will need to provide the OIG access to all Cook Endoscopy pricing for their review and determination of what is fair and reasonable." [*See Reply, Ex. 5*, doc. 46-5.] This suggests that Cook understood that it was being requested to produce sales information only for its Endoscopy products. Nonetheless, the fact remains that the OIG Letter is reasonably read as requiring information relating to *all* of Cook Medical's products, not just Endoscopy products. As a result, the discovery at issue requests this breadth of information as well.

In any event, Acheron submits in its reply brief that "it does not matter whose interpretation of the VA OIG Letter is correct, because Acheron is only seeking the information requested relating to Endoscopy products on the proposed schedule and not any other cook medical products." [*Pl.'s Reply*, doc. 46 at 10.] Acheron states that this amounts to 10% or less of what Cook maintains was requested in the OIG Letter. As a consequence, the amount of employee time required for Cook to comply would be about 10% of what it asserted, that is, 10% of 37 to 52 days (or 296 to 416 hours, assuming 8 hour work days), which equals 29.6 to 41.6 hours, making it similar to the averages reported in the GSA Report in the *Federal Register* (32.41 hours and 41.8 hours). For this reason, Acheron submits that compliance is not unduly burdensome or disproportional to the needs of the case. The Court agrees that limiting the information sought to Endoscopy products significantly decreases the burden on Cook. The Court acknowledges that the GSA estimates are only averages and that certain factors such as the size of the business and high sales volume can increase the amount of time required to respond to the OIG

13

request.  Even so, it does not appear that the burden on Cook would be undue or disproportional to the likely benefit from the discovery.

Besides, it seems that the information sought is relevant to Acheron's claims, including its damages.  While the OIG Letter is a preliminary request for information, and additional information might have been requested in the audit process, Acheron has offered evidence that the requested information gives some indication of how the VA may have responded to its FSS application.  [*See Declaration of Larry Allen*, doc. 46-1 at 1, ¶¶ 12-13 (stating that in order to render an opinion as to whether Acheron's FSS solicitation would have been accepted by the VA, and if so, at what prices or range of prices, he would need to review the information that the VA requested and would have reviewed).]  Any opinion as to what might have happened does not appear to be based on "pure speculation," despite what Cook claims.

Cook expresses concern over the disclosure of highly confidential and proprietary customer, pricing, and other business information.  But as Cook itself notes, the parties can protect the information during discovery with an appropriate Protective Order. Cook's fears of substantial prejudice in the event one party relies on the information at summary judgment or at trial, is premature at this point.  The case could be resolved short of summary judgment or trial.  And if the need for greater protections arises down the road, the Court can address matters at the appropriate time.

Therefore, the Court finds that the *Motion to Compel* should be granted in part and denied in part.  To the extent that *Interrogatory Nos. 22 and 23* and *Requests for Production Nos. 19 and 20* seek information regarding Cook's Endoscopy products, the information

14

is relevant and needed for Acheron's expert to render an informed opinion.  That said, these discovery requests should be, and hereby are, limited to *Endoscopy products only* and *Interrogatory No. 23* and *Request No. 20* are further limited to the six-month time period from *February 1, 2014 through July 31, 2014*.  (This time period was already applicable to *Interrogatory No. 22* and *Request No. 19* as limited by the OIG Letter.)  Furthermore, to the extent the discovery seeks documents that do not exist—Cook asserts that it has no written pricing policies and procedures as requested in *Item* 8 of the *Preliminary Review Materials Requested* (Enclosure A to the OIG Letter) or the specific organizational requested (*Item 3* of the *Preliminary Review Materials Requested*)—Cook Medical will not be ordered to produce documents that do not exist.  Given these understandings, Cook shall answer *Interrogatory Nos. 22 and 23* and produce the documents responsive to *Request for Production Nos. 19 and 20.*  To the extent the parties have otherwise reached agreement as to the discovery disputes raised by the *Motion to Compel*, the motion is denied.  The Court finds that it would be inappropriate to award attorney's fees to any party in this instance and therefore declines to make any award.

### Conclusion

Accordingly, the *Motion to Compel* [doc. 40] is **denied in part** and **granted in part**.

**SO ORDERED**:  09/29/2016

*Denise K. LaRue*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to counsel of record